UNITED STATES, Appellee,

v.

**Specialist Four Montgomery B. WALKER, 563–47–9430, United States Army, Appellant.**

**SPCM 22229.**

U.S. Army Court of Military Review.

9 Jan. 1987.

For Appellant: Captain Joseph Tauber, JAGC (argued); Major Joel D. Miller, JAGC, Captain Stewart C. Hudson, JAGC (on brief).

For Appellee: Captain Cynthia M. Brandon, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC, (on brief).

Before O'ROARK, RABY, and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Pursuant to his pleas, appellant was convicted by special court-martial of distribution of 1.1 grams of cocaine and use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982 and Supp. II 1984). He was sentenced to a bad conduct discharge, confinement for six months, forfeiture of $426.00 pay per month for six months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

Appellant asserts that the court-martial lacked subject matter jurisdiction over the offense of distributing cocaine because appellant's off-post transfer of a small amount of cocaine was not service connected.

The record of trial reflects the following facts pertinent to the resolution of this issue. On 30 April 1985, Specialist K, who was a member of the Fort Benning drug suppression team, was contacted by a confidential source. The confidential source, an active duty lower ranking enlisted person, informed Specialist K that he could introduce him "to a person in the unit" who was selling illicit drugs to service members on Fort Benning. The suspected seller was Specialist Ebben, a female soldier. That evening, the source introduced Specialist K to Specialist Ebben and to appellant. Specialist Ebben and appellant resided together in a house located off-post. Specialist K, who was introduced as a friend of the confidential source "from back home in Louisiana", was dressed in civilian clothes and had a haircut that could have been either military or civilian in style. Appellant told Specialist K that he was in the military and worked at Martin Army Hospital in the fitness center. Specialist Ebben and Specialist K engaged in a casual conversation, during which Specialist K asked Specialist Ebben to obtain a gram of cocaine for him. Specialist Ebben made a phone call, and then told Specialist K that she could give him an eighth of an ounce of cocaine the following evening for $275.00.

On 1 May, Specialist K called Specialist Ebben "at her work phone number" and arranged to obtain the cocaine at her off-post residence that evening. Specialist K arrived at Specialist Ebben's house and was met by appellant, who informed him that Specialist Ebben was going to be late. Specialist K left the house and alerted his surveillance team to the change in plans. He later called the house and spoke with Specialist Ebben who said the cocaine would be available in 15 or 20 minutes. When Specialist K returned to the house, Specialist Ebben offered him his choice of one of the two bags of cocaine in her possession, and subsequently suggested "that it would be wise ... to try to break up that cocaine a little bit, go back to Fort Benning and try to sell some of it." Specialist K told Specialist Ebben that he was not interested in reselling the cocaine and that he would be back in touch with her.

On 15 May, Specialist K called Specialist Ebben's house from the CID office located at Fort Benning. Appellant answered the phone and said that Specialist Ebben was not at home. Specialist K asked appellant if it would be possible to buy more cocaine from Specialist Ebben, and appellant said he would contact her and find out. When Specialist K called back, appellant said he had been in contact with Specialist Ebben and that it would be possible to buy more cocaine from her. He then asked how much cocaine Specialist K wanted to buy. Specialist K said that he wanted one gram of cocaine and that he would pick it up the next day. On 16 May, Specialist K called Specialist Ebben. She told him that she was home sick, but she had the cocaine and he should come to her home and get it from her. When Specialist K arrived at the house, he met appellant in the front yard. Appellant stated that Specialist Ebben did not feel well, and asked if Specialist K had come to pick up the cocaine. Appellant, upon receiving an affirmative response, said he knew where the cocaine was kept and would go get it. Appellant asked if a price had been established. When Specialist K indicated that no price had been quot-

ed to him, appellant stated that Specialist Ebben usually charged $100.00 a gram for it. The price having been fixed, appellant gave Specialist K the cocaine and accepted $100.00 in CID funds to complete the transaction. Before leaving the premises, Specialist K indicated he was interested in purchasing a large quantity of cocaine, and appellant replied that such larger quantities usually were available on Fridays or Saturdays. Subsequent testing revealed that appellant had given Specialist K 1.1 grams of cocaine, enough cocaine "for approximately two to four people to use" and enough for each to get "high off it."

■ We recognize that under existing law a court-martial lacks subject-matter jurisdiction over an offense unless that offense was "service connected." *O'Callahan v. Parker*, 395 U.S. 258, 272, 89 S.Ct. 1683, 1690, 23 L.Ed.2d 291 (1969); *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). However, in *United States v. Lockwood*, 15 M.J. 1, 5 (C.M.A.1983), the Court of Military Appeals clearly instructed its subordinate courts that "the presence of service connection is not to be determined in a rigid and mechanical fashion." In fact, the United States Supreme Court has indicated that the presence or absence of service connection:

> [t]urns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred.

*Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).

Drug offenses constitute an area of criminal activity which pose a distinct threat to the long-term maintenance of good order and discipline in our armed forces. Over six years ago, the United States Court of Military Appeals, after acknowledging "that drug abuse in the military is a most serious problem" and that the nature of servicemembers' lives "may create a special vulnerability to drug use," pertinently, observed:

> [T]he prospect cannot be ignored that prosecution of those servicepersons who possess, use, and distribute drugs off post will tend to dry up sources of drugs for others who would use them on or near a military installation to the detriment of the military mission.

*United States v. Trottier*, 9 M.J. 337, 350 (C.M.A.1980) (emphasis added).

*Trottier* is recognized as the seminal military case concerning subject matter jurisdiction over drug offenses. In *Trottier*, the Court of Military Appeals, after engaging in exhaustive research, concluded that "almost every involvement of service personnel with the commerce in drugs is 'service connected.'" *United States v. Trottier*, 9 M.J. at 350.

The court further opined that "[o]nly under unusual circumstances, then, can it be concluded that drug abuse by a serviceperson would not have a major and direct untoward impact on the military." *United States v. Trottier*, 9 M.J. at 350 n. 28. The court did acknowledge, however, in its discussion of possible exceptions, that "the interest of the military in the sale of a small amount of a contraband substance by a military person to a civilian for the latter's personal use seems attenuated." *Id.*; *United States v. Morley*, 43 C.M.R. 19 (C.M.A.1970).

Subsequently, in *United States v. Barideaux*, 22 M.J. 60 (C.M.A.1986), the Court of Military Appeals was presented with the following scenario: an accused was on terminal leave in a trailer park located some distance from any military installation; a civilian arranged a meeting between the accused, a government informant, and a female CID agent whom the accused had no reason to believe was a soldier; the accused conducted his drug transaction with the female agent and not the informant; and, the accused distributed marijuana to the agent. After the transaction

was completed, the agent and the informant told the accused that they were going to a local civilian recreational area to use the drugs. The court held that under such facts "there were insufficient interests in the military community to warrant court-martial jurisdiction over this offense."

Thus, it appears that notwithstanding the Court of Military Appeals' guidance in *Trottier*, it has continued to examine the totality of the circumstances surrounding a drug offense when resolving complex issues of subject-matter jurisdiction raised by an assertion of lack of "service connection."

■ We note at the outset that the circumstances in the case at bar establish to our satisfaction that Specialist Ebben was conducting a drug distribution business from her home and place of military duty, and that appellant was an accomplice in her criminal venture. In fact, appellant was well versed in Specialist Ebben's business practices, including her pricing policies, and apparently had authority to distribute drugs for her when she was otherwise indisposed. We also are satisfied that the evidence of record establishes that neither Specialist Ebben nor her business assistant, the appellant, were aware that the agent, Specialist K, was a servicemember. Further, we note that this lack of knowledge on their part appears to be due more to their indifference as to this matter than to any conscious effort not to deal with soldiers.[1]

■ We believe that the facts in the instant case are distinguishable from those in either *Morley* or *Barideaux*. For example, appellant was on active duty at the time he distributed the cocaine; appellant distributed the cocaine off-post, but in a city contiguous to Fort Benning, Georgia[2] and the cocaine distribution specification averred this fact; the agent, Specialist K, was introduced to both the principal drug target (Specialist Ebben) and her accomplice, the appellant, by a soldier from Specialist Ebben's unit whom all parties knew was a lower ranking enlisted soldier; the drug target and appellant, both of whom were soldiers, lived together in an off-post house from which they conducted drug activities; the agent was a soldier, although appellant believed he was a civilian; although the agent initially informed the drug target that he was not interested in selling drugs on post but was obtaining drugs for his personal use, he nevertheless subsequently purchased cocaine from appellant in such a quantity that it could have been resold to one or two other persons; and, we infer from the totality of the pertinent evidence of record that appellant and the drug target were, at various times throughout the course of the entire period of drug negotiations, communicating with each other by phone regarding the sale of cocaine to the agent.[3]

1. We hasten to add that neither the subjective intent of a servicemember to sell drugs only to a civilian customer nor any lack of knowledge that his customer is a member of the armed forces is in and of itself dispositive of the issue of subject matter jurisdiction. Normally, for legitimate reasons which we already have acknowledged, the military will have subject matter jurisdiction over drug offenses committed by its personnel. *United States v. Trottier*, 9 M.J. 337. However, in those few exceptional drug cases where *complex* fact patterns may give rise to a legitimate issue of subject matter jurisdiction, *see e.g., United States v. Trottier*, 9 M.J. at 350, n. 28, a totality of the circumstances test should be used to resolve the combined law/fact question of the presence or absence of "service connection." *United States v. Barideaux*, 22 M.J. 60. We believe that in examining the totality of the circumstances, a court should take into account the existence or nonexistence of those considerations enumerated by the Supreme Court in *Schlesinger v. Councilman*, 420 U.S. at 760, 95 S.Ct. at 1314, and cited in the text of this opinion, *supra* at page 742.

2. We take judicial notice of the well-established military fact that in addition to being the location of the United States Army Infantry Center, Fort Benning is the "Home of the United States Army Infantry School." We also note that cocaine is one of the types of drugs that commonly is referred to as a "hard drug."

3. We believe that it can be inferred from the circumstantial evidence of record that at least one or more of these phone calls was placed by appellant from the off-post house to Specialist Ebben at her on-post duty location. We also believe that it can be inferred, absent clear

Moreover, we are satisfied, based on the facts of this case, our knowledge of the general drug threat that currently faces our society at large, and our knowledge of the service-discrediting and extremely adverse impact which the criminal conduct of a drug distributing servicemember can have on military discipline and effectiveness, that the military interest in deterring drug distribution in the case at bar is both distinct from and greater than that of civilian society. In this regard, we do not find significant, in view of the attendant circumstances, the fact that the local civilian community had assumed criminal jurisdiction over Specialist Ebben, who was the key player in this two person drug distribution business. Further, we conclude that the military's interest in the case at bar could not have been adequately vindicated by the civilian courts: for example, those courts are not empowered by law to adjudge a bad conduct discharge against appellant as was appropriately done by the special court-martial in this case.[4]

Thus, based on the above general considerations and the relevant facts in the case at bar, we conclude that the offense averred in Specification 1 of the charge was "service connected."

In summary, we are satisfied that this case presents no unusual circumstances mandating a departure from the general rule of *Trottier* that subject-matter jurisdiction is vested over drug offenses committed by servicemembers of the armed forces.

The findings of guilty and the sentence are affirmed.

Chief Judge O'ROARK and Judge CARMICHAEL concur.

evidence to the contrary, that drug sellers will sell drugs to those persons whom they believe are "safe" customers without regard to the customer's military status. However, we need not and do not rely on either of these permissible inferences in resolving this issue.

4. We have serious doubts that the announcement within a command of a soldier's conviction by a civilian court ever has the same deterrent impact as an announcement to the command of the soldier's conviction by court-martial. This fact of military life normally holds true even when the civilian court sentences the soldier to a substantially greater period of confinement than he usually would receive by court-martial. Most soldiers tend to view civilian convictions as being much more remote and unlikely to happen to them or their friends than they do court-martial convictions.